[No. 30356.   Department One.   March 4, 1948.]

PAUL E. BEERS, *Respondent,* v. LEE MARTIN *et al.,*
*Appellants.*[1]

*Custer & Custer* and *Claude E. Stevens,* for appellants.

*W. J. Daly,* for respondent.

SCHWELLENBACH, J.—This is an appeal from a judgment in
favor of respondent against appellants, in the sum of
twenty-two thousand dollars.

Plaintiff's complaint alleged that on or about the twenty-
third day of September, 1946, he sold and delivered three
trucks to defendants, for which they promised to pay the
sum of twenty-two thousand dollars, and that they have not
paid the sum of twenty-two thousand dollars, nor any part
thereof.   Defendants' answer denied all of the foregoing

[1]Reported in 190 P. (2d) 573.

with the exception that they admitted not paying any portion of the twenty-two thousand dollars.

As an affirmative defense, the defendants alleged an oral agreement between plaintiff and defendant Elmer Swanson for the sale of the trucks; that Beers represented himself to have clear title thereto, which he did not have; that, as an inducement for the sale, Beers guaranteed the tires on the trucks to be usable for logging purposes for six months; that it was understood that the property was to be used for logging purposes, and that it was reasonably adaptable to such use; that the trucks were returned October 7, 1946, because they were useless, and because the tires were worn out; that in October, 1946, Beers informed Swanson that he was not the owner of the property and directed him to deal with R. L. Parker Company, of Tacoma, which Swanson did, but could not close the negotiations. Defendants counterclaimed for judgment in the sum of ten thousand dollars for damages for failure to deliver the trucks according to agreement; for seven hundred dollars expended for repairs of motor; for $2,240 as the reasonable value of the use of the tires for six months and for $186.50 as damages for the removal of licenses.

The testimony introduced by both sides is rather sketchy. Each witness, instead of assisting the trial court to learn the facts as they actually existed, seemed bent on testifying to only so much as would serve the cause which he espoused, and, when an attempt was made to bring out the facts, became evasive. It appears to us that these tactics were not used by the attorneys, but by the parties themselves. A lawsuit is not a game of skill in which a litigant may maneuver himself into a favorable position and his opponent into an unfavorable position. It is a proceeding in which the parties should lay their cards on the table, face up, and permit the trier of facts to determine, from what has been disclosed, the proper solution of the problem confronting them. If the trial court should fail to analyze the facts correctly, or should not correctly apply the facts to the law, the aggrieved party has the remedy of appeal. Each decision, to be correct, must be based upon facts fully disclosed.

██ It being impossible for us, by an examination of the testimony and the exhibits, to ferret out to our satisfaction the true facts in this case, our only recourse is to accept the facts as found by the trial court.

Certain facts have been established in this case. At the time in question, Martin and Swanson had a job logging some timber for the Stimson Logging Company. Each party furnished the equipment which he owned. This equipment was not sufficient to complete the work. Therefore, additional trucks were rented from Beers. Negotiations were had with Beers concerning a sale of the trucks, and, on or about September 23, 1946, Beers was given a check in the sum of twenty-two thousand dollars drawn in his favor by Swanson on the National Bank of Commerce of Seattle. The check was given in connection with the sale of the three trucks in question. At the time of the transaction, Beers was the registered owner of the trucks and R. L. Parker, of Tacoma, was the legal owner, he having a mortgage on the trucks. The next morning Beers attempted to cash the check, but payment was refused by the bank because of insufficient funds. Beers then took the check to Tacoma, where he endorsed it and handed it to Parker.

Shortly thereafter, trouble developed with the tires, and the trucks were not used to any great extent. Negotiations were had with Parker, who delivered the certificates of title to the trucks to the National Bank of Commerce. Sometime between October 20th and October 25th, Swanson purchased from the National Bank of Commerce a twenty-one-thousand-dollar cashier's check payable to R. L. Parker. Because satisfactory arrangements could not be made with Beers, this check was later recalled. Early in November, writs of garnishment were served on behalf of Beers, and thereafter the trucks were returned to him. One of the trucks had never left his yard.

The trial court found that the parties originally intended to, and did, enter into the contract for the sale of the trucks, and that the check was intended to be payment thereof. The court found that there was no warranty on the part of the seller; that the purchasers were experienced loggers and

had an opportunity to observe and examine the trucks before the sale; and that they knew what they were buying.

 The facts having been decided by the trial court against the appellants, and so adopted by us, appellants cannot claim errors, in this court, based upon their conception of the facts.

The judgment will be affirmed upon the furnishing by respondent to appellants, of clear title to the trucks.

MALLERY, C. J., MILLARD, SIMPSON, and HILL, JJ., concur.