479 So.2d 1294 (1985)
Rayford Howard CAMPBELL
v.
STATE.
1 Div. 754.
Court of Criminal Appeals of Alabama.
January 22, 1985.
Rehearing Denied February 26, 1985.
Thomas M. Haas and James M. Byrd, Mobile, for appellant.
Charles A. Graddick, Atty. Gen., and Robert B. Rinehart, Asst. Atty. Gen., for appellee.
*1295 LEIGH M. CLARK, Retired Circuit Judge.
A jury found this appellant guilty on a trial under an indictment charging in pertinent part the following:
"RAYFORD HOWARD CAMPBELL, JR.[[1]]
"... did, on or about April 20, 1983, unlawfully possess in excess of 2.2 pounds of a controlled substance, to-wit: Marijuana, in violation of the Alabama Uniform Controlled Substances Act, a violation of § 20-2-80 of the Code of Alabama."
The Court fixed his punishment at imprisonment in the penitentiary for a term of three years and assessed a fine against him of $25,000.00. § 20-2-80(1)(a) provides:
"Any person who knowingly sells, manufactures, delivers, or brings into this State, or who is knowingly in actual or constructive possession of, in excess of one kilo or 2.2 pounds of cannabis is guilty of a felony, which felony shall be known as `trafficking in cannabis.' If the quantity of cannabis involved:
"(a) Is in excess of one kilo or 2.2 pounds, but less than 2,000 pounds, such person shall be sentenced to a mandatory minimum term of imprisonment of three calendar years and to pay a fine of $25,000.00."
According to the testimony of Sgt. William Lundy of the Mobile Police Department, attached to Narcotics Division, on April 20, 1983, while he had Denton Park under surveillance, he saw defendant, whom he knew, arrive at Denton Park in a pickup truck. On the same occasion, the witness saw Carl Stokes of the Mobile Police Department proceeding under cover, accompanied by a man by the name of Taylor, drive a motor vehicle into the park. Sgt. Lundy further testified that he looked in the pickup truck driven by defendant and saw the following:
"... A large grocery bag and a smaller bag that had several plastic bags in them with green plant material in them. The bags were on the floorboard of the pickup truck."
According to the testimony of Officer Stokes, he, accompanied by an informer by the name of Taylor, talked with the defendant on April 20, 1983, at a filling station and discussed a purchase from defendant of some marijuana on defendant's pickup truck. Officer Stokes was acting under cover at the time. The witness testified, "There was an arrangement between myself, Henry Taylor and the defendant to purchase five pounds of the marijuana for a certain price." He further said, "We left there and went directly to Denton Park, which is just around the corner on Emogene Street. Officer Stokes further testified that while at Denton Park he saw in the pickup truck "two grocery-bag type brown paper sacks" and nine individual clear plastic bags with green plant material, which items were introduced in evidence by the State as State's Exhibits 1, 2, 3, 4, 5, 6, 7, 8, 9, 10 and 11, which he turned in to Ms. Brodbeck, the lab technician at the City Lab, soon after he had identified himself to the defendant and placed him under arrest.
The defendant took the stand and emphatically denied that he had knowingly possessed marijuana. He said that Thomas had previously paid him fifty dollars to deliver a package for him and that on the occasion of defendant's arrest, defendant had been employed by Thomas to make another delivery of some material, which, contrary to defendant's knowledge, consisted of State's Exhibits Nos. 1 through 11.
Five issues are presented in appellant's brief, which we now consider.

I.
Appellant contends that Section 20-2-80, Code of Alabama (1975), contains *1296 such vague, indefinite and uncertain terms as to violate the due process clause of the Fourteenth Amendment to the Constitution of the United States of America. This is not a new contention. It was raised and determined in the case of Dickerson v. State, Ala.Cr.App., 414 So.2d 998, 1004-1005 (1982), in which Judge Tyson states:
"Appellant contends that § 20-2-80(1) is unconstitutional as it provides for no maximum sentence. Consequently, he argues that it is unconstitutionally vague and indefinite, and runs afoul of the doctrine of separation of powers expressed in Article III, § 43 of our Constitution.
"...
"Consequently, the limitation upon the trial court in sentencing under § 20-2-80(1) would be that of § 15, supra, as well as the Eighth Amendment to the United States Constitution made applicable to the states through the Fourteenth Amendment.
"...
"Consequently, we find § 20-2-8(1) not unconstitutionally vague or indefinite as to its sentencing scheme or violative of the separation of powers doctrine of § 43, supra."
Appellant's first issue is without merit; it is contrary to the precedent of Dickerson v. State, supra.

II.
Appellant's second issue is thus stated:
"WHETHER CHARGING APPELLANT POSSESSED IN EXCESS OF 2.2 POUNDS OF MARIJUANA FAILS TO ADEQUATELY AND PROPERLY STATE AN OFFENSE?"
The first paragraph of appellant's argument as to this issue is as follows:
"Marihuana, as defined by law, and cannabis, as undefined by law, are not one and the same substances. Section 20-2-2(15), Code of Alabama (1975), limits marihuana to a specific genus of the cannabis plant, i.e., Cannabis sativa L. There is no limitation, definition, or description anywhere in the Alabama Code as to the meaning of the term Cannabis."
We must recognize that the relatively new crime of possession or sale of marijuana, which came into existence in Alabama in 1971, by the Alabama Uniform Controlled Substances Act (Acts 1971, No. 1407, p. 2378, § 511) has been a source of some confusion, which has been due largely to the fact that there was involved the introduction into the law of this State of the subject of a vegetable product that was not indigenous to Alabama. As a result, legislators, lawyers and judges of Alabama looked elsewhere to ascertain the names, or names and synonyms, the use and usages of the product and their effects, as well as the chemical properties of the product, in order to protect the people of Alabama against the imported evil that has become gigantic. With this in mind, the Alabama Legislature enacted in 1980 the law now codified as Code of Alabama 1975, § 20-2-80, proscribing in part the crime charged in the indictment in the instant case.
In the first sentence of the argument of appellant's counsel in support of his second issue, he says, "Marihuana, as defined by law, and cannabis, as undefined by law, are not one and the same substance." We disagree. Although much has been written in numerous dictionaries, encyclopedias, and an extraordinarily large number of reported cases, as to the meaning of "marijuana" and as to the meaning of "cannabis," we do not find anything therein to the effect that the two substances are not one and the same. The following is found at 28 C.J.S.Supp., § 3, Drugs and Narcotics (1974), p. 10:
"Marijuana. The word `marijuana' is of Mexican origin, and is variously spelled as `mariguana,' `marijuana,' `mariahuana,' `marajuana,' `maraguana,' or `marihuana.' Marijuana is not a scientific term; it is the Mexican name for `cannabis sativa,' which is more commonly known as `Indian hemp.' It is designed to mean a habit-forming substance used by addicts in the form of cigarettes; the narcotic product of the plant cannabis sativa; and while marijuana is not technically *1297 a narcotic, it is treated for all purposes just like an opiate, and usually it comes within such statutory terms as `narcotics,' or `narcotic drugs,' but not if it is expressly excluded therefrom, and where it is not classified as a narcotic or narcotic drug it may be classified as a dangerous drug, and marijuana may be classified as an injurious substance. A statutory definition of the word `marijuana' has been held to include all varieties.
"The word `marijuana' is applied to both the plant and the drug which the plant contains, and the term signifies any part of the hemp plant or extract therefrom which induces somatic and psychic changes in man. As used in some statutes the term admits of no distinction between the growing plant and the drug."
Appellant further argues in his brief that, "There is no limitation, definition, or description anywhere in the Alabama Code as to the meaning of the term Cannabis." Nevertheless, at the time the word "cannabis" came into the law of Alabama, the word had become a well defined one in the authoritative dictionaries of the United States at about the time "marijuana" had become a well defined word in such dictionaries, it appearing therefrom that Cannabis is the Latinization of the Greek word "Kannabis" and that the word "marijuana," however spelled, is a Spanish word, referred to as "Mexican Spanish," largely because of its propagation in Mexico. We quote from the American Heritage Dictionary (1969) in defining the two words as follows:
"Cannabis.
"1. A plant of the genus Cannabis, hemp (see) 2. The dried flowery tops of the hemp plant. (See marijuana, hashish [New Latin, from Latin, hemp, from Greek Kannabis."
"Marijuana, marihuana. 1. A plant, hemp (see). 2. The dried flower clusters and leaves of the hemp plant, especially when taken to induce euphoria. Slang equivalents include `weed,' `pot,' `Mary Jane,' `tea,' `sage,' `grass,' and as a cigarette, `reefer,' `pot,' See hashish, bhang [Mexican Spanish Marijuana, Marihuana]."
Taber's Cyclopedic Medical Dictionary, Second Printing, (1977) defines "marijuana" as follows:
"Also spelled marihuana. An intoxicating, excitant drug, usually in cigarette form and used illegally in the U.S. and elsewhere. Obtained from leaves and flowers of the Indian hemp plant. (Cannabis Sativa). Psychologically habituating but not habit-forming. Withdrawal of marijuana causes no such physical symptoms as opiate withdrawal does. Drug is considered to have no medical value."
The same contention as that made by appellant's second issue was soundly rejected by the Supreme Court of Colorado in Martinez v. People of Colorado, 160 Colo. 333, 417 P.2d 485, 486 (1966), as follows:
"Without prolonging this opinion by engaging in an extended battle in semantics, we conclude as a matter of law that marijuana is identical with cannabis, as it is merely a geographically oriented name for cannabis. In support of our conclusion, see People v. Savage, 64 Cal.App.2d 314, 148 P.2d 654 [(1944) ] and State v. Romero, 74 N.M. 642, 397 P.2d 26 [(1964)]."
The issue is not well taken.

III.
By appellant's third issue, he takes issue with the testimony of the State's toxicologist on cross-examination, which appellant paraphrases as follows:
"The state's toxicologist testified the material she tested was positive for the presence of tetrahydrocanabinol. Then in response to the question: `That's what you mean by the word "marijuana"? Testrahydrocanabinal or a plant with that in it?' the state's toxicologist testified `itsyes.' ..."
Appellant concludes his argument as to this issue by saying that according to the State's own evidence, "Appellant possessed tetrahydrocanabinol, but not marihuana as *1298 defined by law" and that for this reason "Appellant's conviction is due to be reversed." This proposition was decided adversely to appellant in Haynes v. State, Ala.Crim.App., 54 Ala.App. 714, 312 So.2d 406, 414, cert. denied, 294 Ala. 758, 312 So.2d 414 (1975), in which a headnote by West summarized the holding as follows:
"In light of fact that indictment charged possession of `marijuana,' which is the older, more general term comprehending chemical characteristics of cannabis plant did not charge `marihuana,' the term which is used in the Uniform Controlled Substances Act and which substitutes taxonomic definitive nomenclature to define prohibited substance as being all parts of the plant Cannabis Sativa L.[[2]] defendant was apprised by indictment that he was accused of possessing substances containing incriminating ingredient of tetrahydrocannabinol."
See also, Sharpe v. State, Ala.Cr.App., 384 So.2d 633, 634 (1980), and previous cases there cited. We decide the third issue also adversely to appellant.

IV.
The following is the caption of appellant's fourth issue:
"WHETHER THE TESTIMONY OF WEIGHT FROM SCALES OF PROVEN UNKNOWN ACCURACY IS REVERSIBLE ERROR."
The first paragraph of the argument in support of the issue is as follows:
"The State in an attempt to prove the weight of the material Appellant possess, asked the toxicologist [while testifying as a witness called by the State] `how accurate are those [scales] to within, say, a gram? The toxicologist testified, `I'm not sure. I don't know.' No additional question concerning the accuracy of the scales were ever asked, but, over repeated objections of failure to prove the accuracy of the weighing device, the toxicologist testified to the weight of the material."
The testimony of the toxicologist was as to the weight of the "green plant material" in each of the nine clear plastic bags examined by the toxicologist. She testified that the total weight of said green plant material was over three thousand grams, or well over three times 2.2 pounds. Perhaps the State should have shown by some witness whether the scales were accurate, but we are unwilling to conclude that merely because the witness was unable to say the scales were accurate "to within ... a gram," the scales were so inaccurate as to show that the material placed on them was three times weightier than it actually was. The defendant was not harmed by the admission in evidence of the toxicologist's testimony as to what the combined material contained in the nine plastic bags weighed.

V.
As his last issue, appellant contends the trial court erred in failing to give defendant's requested written charge No. 6, which appellant quotes in his brief as follows:
"I charge you, members of the jury, that unless the state proves from the evidence that Rayford Campbell possessed in excess of 2.2 pounds of cannabis excluding material stalks of the plant, fiber produced from the stalks, any other compound, derivative, mixture or preparation of the material stalk (except resin extracted therefrom), fiber or sterilized seed of the plant which is incapable of germination, you must find Rayford Campbell not guilty of trafficking in cannabis."
The charge assumes that the burden or proof was upon the State to show that the weight of the marijuana was "in excess of 2.2 pounds ... excluding material stalks of the plant, fiber produced from the stalks, any other compound, derivative, mixture or preparation of the material *1299 stalk, fiber or sterilized seed of the plant which is incapable of germination." This position of appellant has been determined adversely to him in a number of cases, particularly in Dickerson v. State, supra, at 414 So.2d at 1002, as follows:
"It is well established that the burden is upon the appellant to establish and bring himself within any exclusion which is found not in the enacting clause defining a crime but rather in a subsequent clause or statute. Specifically, he must establish that the marihuana seized from his residence contained excludable matter falling within the definition of such under § 20-2-2(15)...."
The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
BOWEN, HARRIS, TAYLOR and PATTERSON, JJ., concurring.
TYSON, J., concurring with opinion.
TYSON, Judge, concurring.
I concur in the foregoing opinion as prepared by our able colleague, Judge Clark.
Several of our earlier opinions have discussed various aspects of the definition of the term "marijuana". See Haynes v. State, 54 Ala.App. 714, 312 So.2d 406, cert. denied, 294 Ala. 758, 312 So.2d 414 (1975); Hill v. State, 56 Ala.App. 369, 321 So.2d 708, cert. denied, 295 Ala. 405, 321 So.2d 713 (1975); Smith v. State, 335 So.2d 393 (Ala.Crim.App.1976), cert. denied, 335 So.2d 397 (Ala.1976), cert. denied, 335 So.2d 398 (Ala.1976); Radney v. State, 342 So.2d 942 (Ala.Crim.App.1976), cert. denied, 342 So.2d 947 (Ala.1977); Sharpe v. State, 384 So.2d 633 (Ala.Crim.App.1980); Slaughter v. State, 411 So.2d 819 (Ala.Crim.App.1981), cert. denied, 411 So.2d 819 (Ala.1982); Collier v. State, 413 So.2d 396 (Ala.Crim.App. 1981), affirmed, 413 So.2d 403 (Ala.1982); Dickerson v. State, 414 So.2d 998 (Ala. Crim.App.1982) and Tucker v. State, 445 So.2d 311 (Ala.Civ.App.1984).
NOTES
[1] The fact that defendant-appellant was indicted with the addition of "JR." and is otherwise referred to throughout the transcript as a junior is to be noted for the sake of accuracy and in an effort to avoid any injustice to anyone else by a similar name, notwithstanding the fact that the caption of the record and the briefs of the parties on appeal do not show appellant as a junior.
[2] The opinion quoted, at 54 Ala.App. at 718, 312 So.2d at 410, from 1973 Wisconsin Law Review 727, § 767, the following:

"Cannabis is the genus name; sativa is the species name; and L. stands for Linnaeas who discovered and described marihuana."